UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR07-310-RSL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | SUMMARY REPORT OF U.S. |
| | ) | MAGISTRATE JUDGE AS TO |
| LAWRENCE LEWIS GAINES III, | ) | ALLEGED VIOLATIONS |
| | ) | OF SUPERVISED RELEASE |
| Defendant. | ) | |
| | ) | |

An evidentiary hearing on supervised release revocation in this case was scheduled before me on April 21, 2009. The United States was represented by AUSA Lisca Borichewski and the defendant by Kenneth Kanev. The proceedings were recorded on cassette tape.

Defendant had been sentenced on or about May 16, 2008 by the Honorable Robert S. Lasnik on a charge of Conspiracy to Distribute Cocaine and sentenced to five months custody, three years Supervised Release. (Dkt. 66.)

The conditions of supervised release included requirements that defendant comply with all local, state, and federal laws and with the standard conditions of supervision. Other special conditions included participation in substance abuse testing and treatment, abstention from

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE -1

alcohol, no firearms, provide access to financial information, submit to search, maintain a single checking account for all financial transactions, disclose assets and liabilities, and complete 150 days of home confinement. (Dkt. 66 at 4.)

In an application dated April 9, 2009, U.S. Probation Officer Andrea G. Porter alleged the following violations of the conditions of supervised release:

1. Failing to submit a truthful and complete written report for the month of February 2009, in violation of standard condition number 2.

2. Failing to comply with the home confinement program since April 5, 2009, in violation of the special condition requiring he participate in the home confinement program with electronic monitoring as directed by the probation officer for a period of 150 days.

Defendant was advised in full as to those charges and as to his constitutional rights. He denied the violations and requested a hearing before a Magistrate Judge. The hearing was held on April 21, 2009, at which time testimony was taken, exhibits were admitted into evidence, and the argument of the parties was considered (Dkt. 90.) I recommend that the defendant be found to have committed the alleged violations.

### **Findings of Fact and Conclusions of Law**

*Violation 1: Failing to Submit a Truthful and Complete Monthly Report.*

A condition of supervised release required defendant to file monthly supervision reports with his probation officer. The standard form, among other information, asks the supervisee to "List all vehicles owned or driven by you" and "List all expenditures over $500." In his report for February 2009, the defendant did not report any vehicles or expenditures. (Pl. Ex. 1.) The government contends that defendant's monthly report was false and incomplete

because he failed to list a 1995 Cadillac Deville which he purchased from Flamingo Motors on February 14, 2009. Andrea Porter, defendant's probation officer at the time, testified that Mr. Gaines was seen on March 2, 2009 by another probation officer getting into a vehicle after leaving the Tukwila probation office, immediately after completing the report described above. Subsequently, Ms. Porter phoned Mr. Gaines, asking him why he had not reported the vehicle. She testified that the defendant at first completely denied driving away from the office in a vehicle, insisting that the probation officer was mistaken. When she confronted Mr. Gaines with the license plate number, he then admitted that he had purchased the vehicle. Ms. Porter asked him where he had obtained the funds for the purchase, since he was unemployed. Mr. Gaines told her that his girlfriend bought it, but she was working, so she was not able to go to the dealership to make the purchase herself. The purchase agreement for the vehicle lists the defendant as the owner, with a purchase price of $2328.54 (Pl. Ex. 2.)

The defendant testified similarly; that, although he purchased the vehicle, it was with funds provided by his fiancé from her tax refund, and that he conducted the transaction because she had to work. However, he referred several times during his testimony to the vehicle as one "that me and my girlfriend have". He agreed that the vehicle should have been listed on the form, but that he was "in a rush" and wasn't thinking about it, and failed to report it "because I was not paying attention."

I recommend that the defendant be found to have committed this alleged violation.

*Violation 2: Violating the home confinement program*

Testimony was provided by Gina Martinis, the Home Confinement Specialist in the probation office. Mr. Gaines started the home confinement program on March 19, 2009,

signing the Home Confinement Program Participant Agreement. (Pl. Ex. 5.) In that agreement, Mr. Gaines agreed to not tamper with the monitoring unit. Ms. Martinis testified that once the device is fastened on the ankle, the band completes an electronic circuit. The band is held in place with clips, and cannot be removed without a special tool that releases the clips. As part of the monitoring process, if the circuit is broken by cutting the band or tampering with the clips that hold it in place, the device sends an alert.

On April 5, 2009, Ms. Martinis received a series of four separate alerts from Mr. Gaines' device between the hours of 5:00 to 11:00 pm. The following day, she called Mr. Gaines to see if he had experienced any problems with the device. He responded in the negative, but noted that he had accidentally hit the wall with the device when chasing his son. (His testimony indicated that it was his daughter, rather than a son.) Ms. Martinis went to the defendant's residence and inspected the device, which appeared to her to have been tampered with. The clip holding the bracelet band in place had been damaged, and part of the latch had been broken off and was missing, allowing the band to be removed and replaced without the special tool. She removed the bracelet and attached a new device. She inspected the wall area where Mr. Gaines indicated the device had been struck, but did not see any markings. During her testimony, Ms. Martinis compared a sample bracelet (Pl. Ex. 4) with the bracelet alleged to be tampered with (Pl. Ex. 3), demonstrating the scratches and damage to the clip mechanism. She testified that the clipping devices are replaced each time the bracelet is assigned to a new client, and would have been undamaged when assigned to Mr. Gaines.

Testimony was also provided by Robert E. Murray, the federal project manager for B and I, Inc, the manufacturer of the electronic bracelet. Mr. Murray's previous employment

was as a United States Probation Officer in the Western District of Washington, and he currently manages the federal contract for the device on a national basis and provides training. He testified that he has seen "thousands" of these devices in the course of his work. He testified that the latch set on the bracelet has a male and female part that clip together. Once locked, the latch can only be removed with a special tool, and is designed to show damage if removed in any other way. If the latch is removed and strap is opened, it will cause an alert to be sent to the monitor.

Mr. Murray testified that an exterior strike to the device, such as hitting a wall, might cause scratching on the casing, but would not damage the latch set. He inspected the device in question and testified that, in his opinion, the device showed obvious signs of tampering, and damage that was inconsistent with striking the device against another object such as a wall.

Ashley Williams, the defendant's fiancé, testified on his behalf. She indicated that on April 5, a Sunday, she was at home with the defendant. She was in another room, and heard a "loud bump". She went to the kitchen and saw Mr. Gaines and his oldest daughter roughhousing. He had fallen while tickling his daughter (age 10), and Ms. Williams and the daughter laughed at him. She testified that the defendant remained at home the entire evening, and did not leave. She took a cell phone picture of a scratched area on the corner of the wall in the area of the defendant's fall, near the kitchen. The photograph shows an area of approximately 3 inches long of paint scratched off on the corner, approximately 12 inches from the floor.

The defendant testified, denying that he tampered with the device, and asserting that he did not remove the strap band. He indicated that the plastic case of the device hit the wall

when he was tickling his daughter and he tripped over the phone cord.   He does not know why the device sent the alerts, testifying that it was covered by his sock and he did not inspect it after it hit the wall.   He did not leave the apartment the entire evening.

Despite the defendant's suggestion that the device must have been damaged when it struck the wall, the testimony of Mr. Murray establishes that the internal damage to the latch clip could only have been caused by intentional tampering.   A visual inspection of the scratched area is consistent with an effort to remove the latching device, rather than an external striking.   If the latching device had broken when it struck the wall, the broken piece would have remained inside the casing. The photograph taken by Ms. Williams does not show damage to the wall to the extent that would be expected to damage the latch mechanism.   I recommend that the defendant be found to have committed this alleged violation.

### **Conclusion**

For the reasons stated herein, I recommend that the Court find defendant to have violated his supervised release as alleged in violations 1 and 2, and that the Court conduct a hearing limited to the issue of disposition.   The next hearing will be set before Judge Lasnik.

Pending a final determination by the Court, defendant has been detained.

DATED this 22nd day of April, 2009.

<pre>
                                     s/ Mary Alice Theiler
                                     United States Magistrate Judge
</pre>

cc:   District Judge:           Honorable Robert S. Lasnik
      AUSA:                     Lisca Borichewski
      Defendant's attorney:     Kenneth Kanev
      Probation officer:        Andrea Porter